2025 IL App (2d) 240623-U
No. 2-24-0623
Order filed January 15, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 24-CF-1838 |
| KYLE BURNETT, | ) ) ) | Honorable Salvatore LoPiccolo, Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BIRKETT delivered the judgment of the court.
Justices McLaren and Hutchinson concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not abuse its discretion in granting the State's petition to detain defendant because its factual determination that there was no condition or combination of conditions it could impose to mitigate the risk that defendant's pretrial release would pose to the community was not against the manifest weight of the evidence.

¶ 2    In this interlocutory appeal under Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024), defendant, Kyle Burnett, appeals the orders of the circuit court of Kane County granting the State's verified petition to deny his pretrial release under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110 *et seq*. (West 2022)), commonly known as the Pretrial Fairness

Act (Act), and denying his subsequent motion for relief pursuant to Rule 604(h)(2). Defendant, through appointed counsel, has filed a memorandum as permitted by Rule 604(h)(7), arguing that the trial court erred in finding that there were no conditions of release that could mitigate his dangerousness. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On August 22, 2024, defendant was charged with being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2022)) (Class X felony), two counts of unlawful possession of a weapon by a felon (*id*. § 24-1.1(a)) (Class 2 felony), possession of a firearm by a street gang member (*id*. § 24-1.8(a)(1)) (Class 2 felony), two counts of aggravated unlawful use of a weapon (*id*. § 24-1.6(a)(1)) (Class 2 felony), reckless discharge of a firearm (*id*. § 24-1.5(a)) (Class 4 felony), and endangering a child (*id*. § 12C-5(a)(2)) (Class A misdemeanor). That same day, the State filed a verified petition to deny defendant pretrial release.

¶ 5     On August 22, 2024, the circuit court held a hearing on the State's petition. The State proceeded by way of proffer from a St. Charles police department synopsis, which outlined the following events. On August 21, 2024, at approximately 12:50 p.m., officers were dispatched to an Arby's restaurant on East Main Street in St. Charles in response to a report of shots fired. The 911 caller, John Case, described the shooter as a black male dressed entirely in red, including a red hat. Case reported that the subject was walking with two white females and a baby. Upon arrival, the officers confronted defendant, who matched the description provided by Case. The officers observed the outline of a firearm in the right front pocket of defendant's sweatshirt. When the officers ordered defendant to show his hands, he initially grabbed one of the women, who was holding a baby, and put her in front of him as a shield. Defendant then complied with the officers' commands and sat on the ground. The officers handcuffed defendant and recovered a SIG Sauer

.22 caliber pistol from the right front pocket of his sweatshirt. The firearm was loaded with one round in the chamber and four rounds in the magazine. The two females with defendant were identified as Kristen Williamson, defendant's girlfriend, and Tessan Alfredson. Williamson was carrying her 14-month-old child. Both women declined to speak with the officers.

¶ 6    Police interviewed two witnesses at the scene: Case, the individual who called the police, and Laura Gulino. Case reported that he was eating fast food in his car when he heard a "pop" sound. He then observed defendant and two women walking away from the direction of the sound. One of the women was carrying a baby and was covering the baby's ears. As the group passed his vehicle, Case observed what he described as a "classic Glock shape" composite semi-automatic pistol in defendant's right pocket. He also saw the handle and the backside of the pistol's breach, which was black. According to Case, defendant noticed him and made a "hey, be cool" gesture by putting his finger to his lips. Case stated that defendant appeared to be "drunk or high," and he believed that the pistol had discharged accidentally while defendant was "fumbling" with it. Gulino reported that she was eating lunch in her parked car in the Arby's parking lot when she saw defendant, who was wearing a red hoodie and baggie clothing, with two females and a baby. Gulino stated that she saw defendant pull a gun out from his sweatshirt, point it into the air, and fire. Defendant then looked right at her and smiled.

¶ 7    The State also presented defendant's history of arrests and legal proceedings to the trial court. The arrest immediately prior to the instant offenses was on July 12, 2024, when defendant was charged in Kane County for the Class X offense of possession of a controlled substance with intent to deliver. The State explained that defendant was initially detained following a detention hearing pursuant to the Act, but he was granted pretrial release on July 24, 2024. As a condition of his pretrial release, defendant was ordered not to commit any criminal offenses or possess a

firearm. The State emphasized that, despite these conditions, defendant was arrested less than one month later for the instant offenses. The State also proffered that petitions to revoke probation were pending in Kendall County, that defendant was a member of the Gangster Disciples street gang, and that he had 27 arrests and 24 convictions.

¶ 8     Defendant proffered that he was employed as a painter and that he had three children, ages 13, 12, and 1. Defendant then called Williamson, who testified as follows. She had been dating defendant for the past seven or eight months and, during that time, they had lived together in various hotels. On the afternoon of August 21, 2022, she was with defendant, her friend Tessan, and her child. They were walking back to the Super 8 hotel where she had been staying with defendant. She testified that, during the walk, she was carrying "a Sig and Sager 22" pistol, which she spelled for the court. The weapon was tucked into her pants on the "right side" and was covered by her shirt. Williamson testified that the pistol was hers and that she purchased it about a month earlier at "J&R Shootings," though she could not recall the city where she purchased it. That information was "in her emails." She paid $439 plus tax for the gun and had fired it at a shooting range, but she could not recall when she last fired it.

¶ 9     Williamson testified that, as the group walked back toward the Super 8 hotel, they were "swarmed by police." The gun was loaded with a magazine, but no bullet was in the chamber. Williamson testified that she had a Firearm Owners Identification (FOID) card, but she "got scared" when the police approached them because she was not licensed to carry a concealed weapon. Defendant was "right behind" her. She "back[ed] up towards him," held her baby in one hand and, with the other hand, she reached behind her and slid the pistol into defendant's right coat pocket. It occurred "kind of in the *** motion of going down." She was "sitting on his lap, and we fell down." She did not tell defendant that she had placed a gun in his pocket, but rather,

she "just kind of did it." Williamson denied that defendant grabbed her and pulled her in front of him when the police arrived. Williamson further testified that she had never let anyone besides herself hold or fire the gun. Williamson had spoken with defendant on the phone regarding the incident. Defendant told her that he did not know she had placed a gun in his pocket, and he asked her "why [she] did it." She apologized to defendant. Williamson had spoken to defendant on the phone several times following his arrest, but they discussed the firearm only that one time. Williamson was aware that, at the time of defendant's arrest, he was prohibited from possessing any firearms. She denied that the pistol was fired during their walk that day.

¶ 10    In its argument, the State clarified that while defendant was charged with multiple detainable offenses, it sought pretrial detention based only on the counts of armed habitual criminal and unlawful possession of a weapon by a felon, and it argued that it had shown by clear and convincing evidence that the proof is evident or the presumption great that defendant committed those offenses. The State also contended that Williamson's testimony—that she surreptitiously slipped the gun into defendant's pocket while holding a 14-month-old child, surrounded by police, and with defendant positioned behind her—was "ridiculous" and "completely unbelievable." In arguing that defendant posed a real and present threat to the community, the State emphasized that the instant offense involved a weapon possessed by a convicted felon. It also pointed to defendant's criminal history, which included convictions for aggravated domestic battery resulting in great bodily harm and three misdemeanor domestic battery convictions. The State next argued that there were no conditions that the court could impose that could mitigate the threat defendant posed to the community. It noted defendant's history of violating probation and pretrial release conditions, emphasizing that he was arrested with a firearm less than one month after being released in connection with a different offense and ordered not to possess any firearms. The State

also contended that electronic home monitoring (EHM) and GPS monitoring would not mitigate the danger defendant posed to the public because those conditions would not prevent him from possessing a firearm. The State also underscored that defendant's living arrangement provided him access to firearms through Williamson, who testified that she lived with defendant, had a FOID card, and owned a firearm.

¶ 11 In response, defendant pointed to Williamson's testimony and argued that he was unaware that Williamson had placed a firearm in his pocket and that the State therefore had not proven by clear and convincing evidence that he committed a detainable offense. He further contended that the court should view Williamson's testimony as credible because she admitted to possessing a concealed weapon without a license, potentially implicating herself in a Class 4 felony. Regarding dangerousness, defendant emphasized that the firearm was not used to threaten anyone or to commit another crime, and he noted that Case told the police that he believed the gun was discharged accidentally. In defendant's view, even if the circumstances outlined in the synopsis were true, they did not demonstrate that he was a threat to anyone. Defendant also stated that he was not requesting EHM as a condition of his release due to his "transient" living situation. However, he asserted that appropriate conditions of release would include that he be required to appear at court and that he be prohibited from possessing any firearms.

¶ 12 The trial court granted the State's petition and ordered that defendant be detained pending trial. Relying on the synopsis, the court ruled that the State had demonstrated that the proof is evident or the presumption great that defendant committed the charged offenses. It also noted that defendant's prior convictions for aggravated domestic battery resulting in great bodily harm and unlawful possession of a weapon by a felon were proper predicate felonies for the charges of armed habitual criminal and unlawful possession of a weapon by a felon. In explaining its ruling, the

court found Williamson not credible, noting that she swayed back and forth and made no eye contact with the judge or counsel for the State. Additionally, the court commented that Williamson's testimony made "no sense." It highlighted her inability to correctly identify the firearm manufacturer and her mistake about whether a round was in the chamber. It also found it illogical that Williamson would have slipped the gun into defendant's pocket, given that she cared for him and knew he was prohibited from possessing a firearm. The court noted that Williamson had "plenty of reasons not to tell the truth based on her relationship with the defendant," whereas the unrelated eyewitnesses had "no reason to lie."

¶ 13    The court also found that the State had proven by clear and convincing evidence that defendant's pretrial release would put the community in danger, noting that defendant discharged a firearm "in broad daylight at lunch time" near other people, including at the Arby's restaurant and the Super 8 hotel. In finding that there were no conditions the court could impose to mitigate the threat that defendant's pretrial release would pose to the community, the court found that defendant's conduct demonstrated that he was unwilling to abide by any conditions it could impose. It noted that, at the time of the instant offense, defendant was on probation as well as pretrial release for a Class X felony, and he had been ordered in both instances not to commit any other crimes or possess a firearm. Despite these restrictions, defendant discharged a firearm into the air. The court further reasoned that EHM and GPS monitoring would not prevent defendant from possessing a firearm, but rather, these conditions would only "tell us where he is at."

¶ 14    On August 23, 2024, defendant filed a motion for relief, arguing that the State failed to prove by clear and convincing evidence that the proof was evident or the presumption great that he committed a qualifying offense. He further asserted that the State failed to demonstrate he posed a threat to the community and that no conditions of release could mitigate any such threat.

¶ 15    At the hearing on the motion, defendant once again relied on Williamson's testimony to refute the State's assertion that he committed a detainable offense.  Defendant also informed the court that he could reside alone at an address in Glendale Heights, and that the court could prohibit him from having contact with Williamson while the case was pending.  Thus, defendant requested that he be released but that the court order that he be placed on EHM and be prohibited from having any contact with Williamson, who owned the firearm at issue in this case.

¶ 16    In opposition, the State emphasized that defendant had been granted pretrial release on July 24, 2024, in connection with a Class X drug offense but, less than one month later, he was arrested for the current offense and found to possess a firearm—notwithstanding the conditions that he not possess a firearm and refrain from committing another offense.  The State also highlighted that, during the original detention hearing, the court found Williamson not to be credible.  The State further emphasized witness statements, as reported in the police synopsis, including Gulino's account that she observed defendant pull a gun from his sweatshirt, point it into the air, and fire it, after which he immediately looked at her and smiled.

¶ 17    After a brief recess to review the State's exhibits, the trial court denied the motion for relief. It concluded that the State had proved by clear and convincing evidence that the proof was evident or the presumption great that defendant committed a detainable offense, that his release would pose a real and present threat to the community, and that it would "echo the findings" it made at the initial detention hearing.  Accordingly, the court denied defendant's motion for relief.

¶ 18    Defendant appeals.

¶ 19                                    II. ANALYSIS

¶ 20    All persons charged with a criminal offense in Illinois are eligible for pretrial release.  725 ILCS 5/110-1.5, 110-2(a) (West 2022).  To overcome the presumption of pretrial release, the State

must prove by clear and convincing evidence that: (1) the proof is evident or the presumption great that the defendant has committed a detainable offense; (2) the defendant poses a real and present threat to the safety of any person or the community based on the specific articulable facts of the case; and (3) no condition or combination of conditions could mitigate the real and present threat, based on the specific articulable facts of the case. *Id.* § 110-6.1(e).

¶ 21    We review the trial court's decision to deny pretrial release under a bifurcated standard. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. We apply the manifest-weight-of-the-evidence standard to the court's factual findings, including whether a defendant poses a threat to the community and whether any release conditions could mitigate that threat. *Id.* A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent. *In re Jose A.*, 2018 IL App (2d) 180170, ¶ 17. The ultimate decision of whether detention is warranted is reviewed for an abuse of discretion. *Trottier*, 2023 IL App (2d) 230317, ¶ 13. An abuse of discretion occurs when the court's determination is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the court. *Id.*

¶ 22    Defendant's sole argument on appeal is that the trial court erred in denying his motion for relief, asserting that the State failed to prove by clear and convincing evidence that no condition or combination of conditions could mitigate the alleged threat his pretrial release would pose to the community. Defendant emphasizes that, at the initial detention hearing, the State argued that EHM and GPS monitoring would not mitigate the threat because defendant lived with Williamson, who testified that she had a FOID card and had purchased the firearm at issue in the instant offenses. At the subsequent hearing on defendant's motion for relief, defendant asserted that he had secured independent housing and could live apart from Williamson. He contends that this arrangement would "directly mitigate[] any threat of [defendant] having access to firearms" and

states that the court should have ordered his release and entered an order prohibiting him from having any contact with Williamson during the pendency of the case.

¶ 23    This argument fails because it fails to account for the fact that defendant had repeatedly failed to abide by previous conditions of release, and thus, it was reasonable for the trial court to base its decision on this ground.  Contrary to defendant's assertions, the court's finding on conditions hinged not on defendant's purported access to firearms through Williamson, but rather, on his demonstrated failure to abide by court-imposed restrictions.  The State presented evidence of defendant's extensive criminal history at the initial detention hearing, which demonstrated a pattern of committing new offenses while under court supervision for prior offenses.  For example, in 2022, defendant was charged in Kendall County with possession of a controlled substance with intent to deliver and released on bond on February 7, 2022.  The following month, while he remained on bond, defendant was arrested and charged in Kane County with domestic battery.  He was released on bond and ordered to have no contact with the victim.  Then, just 10 days later, defendant was arrested and charged with aggravated domestic battery in Kane County in connection with an incident involving the same victim.  While he was on probation in those cases, defendant was charged with possessing a weapon in a penal institution in Kendall County.  After entering a plea deal, defendant was sentenced to three years' imprisonment for possession of a controlled substance with intent to deliver and 48 months' probation for possession of a weapon in a penal institution.  He was discharged from parole on December 2, 2023.  However, just 20 days later, while still on probation, defendant was charged with domestic violence involving a different victim in Cook County.  His two-year probation in Kane County for aggravated domestic battery terminated in June 2024, but the following month he was arrested in Kane County and charged with unlawful possession of a controlled substance with intent to deliver (Class X felony).

He was initially detained following a hearing under the Act but was subsequently released on July 24, 2024, under conditions prohibiting firearm possession and the commission of any crimes. Less than one month later, in the present case, defendant was observed firing a gun into the air in broad daylight, and police recovered a loaded gun from him at the scene.

¶ 24    The trial court reasonably concluded, based on this history, that defendant would not adhere to any pretrial release conditions it could impose. Its findings, detailed in a written order, pertinently stated:

> "No condition of Pre-Trial Release will mitigate the real and present threat to the community posed by this Defendant. Defendant has demonstrated an inability to conform his conduct to the laws of this State. This Defendant has a history of violating conditions of bond by committing additional offenses while on bond. Defendant [has] a history of violating conditions of pretrial release by committing new offenses and possessing weapons. Defendant has also committed offenses while on parole. *** EHM/GPS will not prevent this defendant from possessing a firearm. EHM/GPS relies on defendant to follow the rules, and he has demonstrated an inability to follow rules."

Defendant also contends that the trial court abused its discretion by failing to expressly mention conditions or explain why his newly proposed conditions (living elsewhere and no contact with Williamson) would be inadequate to mitigate the risk his release would pose. This argument fails, because the court commented during its ruling on the motion for relief that it would "echo its previous findings," reflects its reasonable view that defendant's demonstrated failure to adhere to release conditions would apply equally to the newly proposed conditions, rendering them insufficient to mitigate the risks. Given defendant's history of noncompliance with court-ordered conditions of release, we cannot say that the court's finding—that less restrictive conditions would

not assure the safety of the community—is against the manifest weight of the evidence. Likewise, we cannot say that the court's decision to detain defendant pending trial was an abuse of discretion.

¶ 25                                    III. CONCLUSION

¶ 26     For the reasons stated, we affirm the order of the circuit court of Kane County granting the State's petition to detain and denying defendant's motion for relief.

¶ 27     Affirmed.